**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cr-20463-ALTMAN**

**UNITED STATES OF AMERICA**,

*v.*

**GUSTAVO ALFONSO CASTANO RESTREPO**,

> *Defendant.*
> _____/

## ORDER

On September 9, 2025, our Defendant, Gustavo Alfonso Castano Restrepo, moved to strike the Government's Notice of Intent to Seek Death Penalty (the "Death Notice") [ECF No. 46]. *See* Motion to Strike the Death Penalty [ECF No. 59]. On May 21, 2026, in a *thirty-eight*-page order, we denied Restrepo's request and allowed the Government to seek the death penalty. *See United States v. Castano Restrepo*, 2026 WL 1425059 (S.D. Fla. May 21, 2026) (Altman, J.) (the "Order").[1] A month later, on June 24, 2026, the Defendant moved for reconsideration. *See* Motion for Reconsideration (the "Motion") [ECF No. 114]; *see also* Government's Response in Opposition (the "Response") [ECF No. 122]. After careful review, we now **DENY** that Motion.

## THE LAW

"Although the Federal Rules of Criminal Procedure do not specifically authorize motions for reconsideration, both the Supreme Court and [the Eleventh Circuit] have permitted parties to file such motions in criminal cases." *Serrano v. United States*, 411 F. App'x 253, 255 (11th Cir. 2011).[2] "In ruling on a motion for reconsideration in a criminal case, federal district courts apply civil standards and

---

[1] Our Order Denying the Motion to Strike can also be found on the docket at [ECF No. 99].

[2] *See also United States v. Phillips*, 597 F.3d 1190, 1199 (11th Cir. 2010) ("The government correctly points out that the Supreme Court and this Court have permitted motions for reconsideration in criminal cases notwithstanding the fact that the Federal Rules of Criminal Procedure do not expressly provide for them [.]").

exercise substantial discretion." *United States v. Marcelina Orozco*, 2020 WL 3963719, at \*1 (S.D. Fla. July 13, 2020) (Bloom, J.).

Our "denial of [Restrepo's] motion to strike is clearly a non-final, interlocutory decision." *United States v. Wilk*, 452 F.3d 1208, 1220 (11th Cir. 2006). "Though district courts enjoy plenary *power* to reconsider non-final rulings, they need not employ plenary *review* when doing so." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1380 (11th Cir. 2024). "Indeed, in most instances district courts should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution." *Ibid.* "A district court's discretion in these matters is governed by the law-of-the-case doctrine, which in this context functions as a guide for courts rather than 'a limit to their power.'" *Ibid.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–17(1988)). "A district court's decision to reconsider an interlocutory order is thus committed to its sound judgment[.]" *Id.* at 1381.

Still, "[a] motion for reconsideration cannot be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'" *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (quoting *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)). The Eleventh Circuit has cautioned that "permit[ting] the unlimited renewal or reconsideration of fully decided motions would needlessly tie up judicial resources and seriously delay the final disposition of cases[.]" *United States v. Gupta*, 363 F.3d 1169, 1174 (11th Cir. 2004). "It's thus well-settled that motions for reconsideration are disfavored and that relief . . . is an extraordinary remedy to be employed sparingly." *Britt v. IEC Corp.*, 2022 WL 3370216, at \*2 (S.D. Fla. Aug. 16, 2022) (Altman, J.) (cleaned up).

### ANALYSIS

In asking us to revisit our order denying his motion to strike, Restrepo relies on the Third Circuit's recent decision in *United States v. Dangleben*, 177 F.4th 477 (3d Cir. 2026). "*Dangleben*," he says,

"is a precedential circuit court decision addressing for the first time at the appellate level a district court's inherent authority to set and enforce a deadline by which the prosecution must file a notice of intent to seek the death penalty under 18 U.S.C. § 3593(a), and the consequences of the prosecution's reversal of a no-seek determination made before the court and relied upon by the defense." Motion at 1. "The [*Dangleben*] Court," he continues, "stated that '[c]ommon sense, fair play, and basic criminal procedure all require that the court can enforce the Government's promise.'" *Ibid.* (quoting *Dangleben*, 177 F.4th at 486). "These principles apply with even greater force in this case," Restrepo adds, "where the prosecution's no-seek announcement was made in open court and relied upon by Mr. Castano and his defense counsel." *Ibid.* But, as we explained at our recent status conference, *see* June 2, 2026, Paperless Minute Entry [ECF No. 107], *Dangleben* has very little to do with our case.

Unlike our case, the district court in *Dangleben* set a firm deadline by which the government had to decide whether to pursue the death penalty. *See Restrepo*, 2026 WL 1425059, at *17 ("[U]nlike what happened in *Spurlock*, *Cole*, *Dangleben*, and *Suarez*, we never set a deadline for the Government to file its death notice." (citing *United States v. Dangleben*, 2025 WL 2647195, at *3 (D.V.I. Sep. 15, 2025))). In *Dangleben*, the government blew through that deadline and filed its death notice *over a year* late. As the district court explained: "The Government's Death Notice, filed well over a year after the Court-extended deadline of February 12, 2024, clearly violates that deadline." *Dangleben*, 2025 WL 2647195, at *3. The district court thus did little more than enforce its own scheduling order—something any district court judge (including this one) likely would have done. And that enforcement of the scheduling order is all the Third Circuit affirmed. "So we hold," the panel wrote, "that § 3593(a) does not displace a district court's inherent power to manage its cases to ensure a just and fair resolution. In fact, the requirement that the Government file a seek notice within 'a reasonable time' will sometimes require the district court to police that line." *Dangelben*, 177 F.4th at 489 (cleaned up) (quoting § 3593(a)); *see also ibid.* ("To sum up: The Government is correct that it retains discretion to

3

evaluate the appropriate charges based on known facts. But it is equally true that the Government cannot usurp the Court's case-management function. On the facts of this case, the District Court did not abuse its discretion when it struck the Government's very belated (and contradictory) notice to seek the death penalty.").

In our case, by contrast, we had set no deadline within which the Government was obligated to file its death notice—and so, as we explained in our order, the Government's Death Notice violated no such order. *See Restrepo*, 2026 WL 1425059, at *1 (noting that "we never set a deadline for [the Government] to file its potential death notice" and explaining that, "[h]ad the Government in our case violated our scheduling order the way the government had in those other cases, we may well have joined those other judges in prohibiting the government from doing so").

But we didn't end there. Consistent with our obligations under the statute and the case law, we proceeded to carefully consider whether the Government had filed the Death Notice within "a reasonable time." *See Restrepo*, WL 1425059, at *15 ("In the end, on the crucial question *Wilk* confronted—how much time does the defendant need to prepare for his death-penalty trial?—our case (in which we gave the Defendant *more than double* the preparation time the court found sufficient in *Wilk*) plainly satisfies the *Wilk* standard." (citing *Wilk*, 452 F.3d 1208)). Nothing in *Dangelben* even purports to undermine that analysis.

Resisting this reality, the Defendant points to the Third Circuit's suggestion that "[c]ommon sense, fair play, and basic criminal procedure all require that the court can enforce the Government's promise," *Dangleben*, 177 F.4th at 486, and insists that "[t]hese principles apply with even greater force in this case where the prosecution's no-seek announcement was made in open court and relied upon by Mr. Castano and his defense counsel," Motion at 3. But "[t]he meaning of a statement often turns on the context in which it is made"—and, in our case, "context is determinative." *United States v. Briggs*,

4

592 U.S. 69, 72 (2020). Here's what the Third Circuit actually said in the portion our Defendant selectively quotes:

> If the Government wishes to pursue the death penalty for a capital-eligible offense, it must file a notice that it "will seek the sentence of death" at "a reasonable time before the trial." 18 U.S.C. § 3593(a). The Government is not statutorily required to state that it will *not* seek the death penalty. But what if a court orders the Government to file a seek notice and the Government represents to the court that it will *not* seek the death penalty? Common sense, fair play, and basic criminal procedure all require that the court can enforce the Government's promise.

*Dangleben*, 177 F.4th at 486. Again, then, *Dangleben* asked only "whether § 3593(a) precludes or otherwise displaces a district court's inherent power to set a deadline by which the Government must notice if it will seek the death penalty." *Ibid.* And, of course, since § 3593(a) does no such thing, the Third Circuit correctly concluded that the district hadn't abused its discretion by holding the government to the scheduling deadline the court had set over a year before.

Indeed, in the one part of *Dangleben* that did address the issues we face here, the Third Circuit (notably) said nothing at all. "We need not," the panel observed in a footnote, "and do not, address whether the Government's attempted seek notice complies with § 3593(a)'s requirement that such notices be filed a 'reasonable time' before trial; whether the Government's attempted seek notice is an 'amendment' to its earlier no-seek decision that requires 'good cause' under § 3593(a) and, if so, whether the Government can make that showing; or whether permitting the Government to seek the death penalty after it told Dangleben it would not violates Dangleben's Fifth Amendment procedural due process rights." *Dangleben*, 177 F.4th at 489 n.4. *Dangleben*, in short, is inapposite here.

## CONCLUSION

We therefore **ORDER and ADJUDGE** that the Defendant's Motion for Reconsideration [ECF No. 114] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on July 23, 2026.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

6